# Casseday *v.* Baltimore & Ohio Railroad Company, Appellant, et al.

Argued October 2, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Robert D. Dalzell,* of *Dalzell, McFall & Pringle,* for appellant.

*Robbin B. Wolf,* of *Wolf, McDonald, Graham & Ingram,* and *J. Roy Dickie,* of *Dickie, Robinson & Mc-Camey,* with them *W. Davis Graham* and *Newcomb, Nord & Hornbeck,* for appellees.

OPINION BY MR. JUSTICE DREW, November 25, 1941:

Plaintiff, Acanthus B. Casseday, instituted this action in trespass against his employer, Baltimore & Ohio Railroad Company, under the Federal Employers' Liability Act (Act of April 22, 1908, c. 149, 35 Stat. 65), and also against M. J. Hannon and R. A. Hannon, under the common law, to recover compensation for personal injuries sustained as a result of a collision between a truck, owned by the Hannons, and a freight train, owned and operated by defendant railroad. The jury returned a verdict for plaintiff and against all defendants. Upon plaintiff's acceptance of a reduction in the verdict, motions for judgment n. o. v. and for a new trial were refused. From the entry of judgment on the verdict as reduced, defendant railroad alone appealed.

The accident took place at about 4:30 o'clock on the somewhat foggy morning of August 20, 1937, in a rural

section, at Baxter Siding, near Fairmont, West Virginia, where the single-track branch of defendant railroad, as well as a spur track running almost parallel with and a short distance to the north of it, intersects a state highway at almost a right angle. The highway at this point runs approximately north and south. Plaintiff, a veteran conductor of more than thirty years' service, was in charge of a freight train of defendant railroad, consisting of 107 empty coal cars. The train at the time of the accident was being moved backwards at about eight or ten miles an hour in a westerly direction, with its caboose in the lead. It was travelling around a long left curve toward Baxter Siding, on the main track, preparatory to placing a portion of the cars in the train upon the spur track there. The Hannon truck was being operated by their driver southwardly on the highway at about thirty or thirty-five miles an hour. He claimed that as he drove toward the crossing from the north, his vision of the main track to his left—the direction from which the train approached—was not only somewhat obscured by the hilly terrain of the countryside, but also by a freight car, which at the time was standing on the spur track about eight feet east of the highway and some 26 feet north of the main track. There were, however, the usual railroad warning signs on the highway: one, between the siding and main track, and another, approximately 110 feet north of the crossing. The driver of the Hannon truck proceeded across the spur track and onto the main track without stopping, looking or listening, and the right rear of the caboose, upon which plaintiff was then standing, struck the left front fender of the truck. Plaintiff was thrown to the highway and received the serious injuries of which he here complains.

Since the Hannons did not appeal, the sole question here for our determination is whether or not plaintiff has alleged and proved any negligence on the part of defendant railroad for which he can recover damages. Defendant railroad admits that the cars in this train

were from the States of Pennsylvania and New York, and, therefore, that as to it the suit was properly brought under the Federal Employers' Liability Act. There is no question involved as to a violation of any regulation of the Interstate Commerce Commission, or any other Act of Congress, and, therefore, there can be no recovery under the Federal Employers' Liability Act in the absence of negligence: *New Orleans & N. E. R. R. Co. v. Harris,* 247 U. S. 367, 371.

The acts of negligence which plaintiff alleges in his statement of claim, and to support which he offered testimony, are the placing of the freight car on the siding at Baxter, and the inadequacy of the lights and whistle on the caboose. The placing of freight cars on sidings or spur tracks is usual and necessary in the operation of a railroad and the conduct of its business. Therefore, an employee, such as plaintiff who had served for thirty-seven years as a freight conductor and for more than forty-two years as a railroad employee, is conclusively presumed to have had knowledge of any ordinary risks and dangers, if there are any, incident to freight cars standing on sidings. It would be absurd to suppose that a conductor of long experience would be ignorant of the fact that it is the most common practice to place freight cars on sidings, which are constructed for that use, and that frequently necessity requires that they be placed in close proximity to public highways. We said, in *McCully v. Monongahela Ry. Co.,* 289 Pa. 393, 399: "Employment on a railroad exposes one to many dangers . . . that are incident to the engagement, but these dangers are assumed to be guarded against by attention necessary to protect one's self. . . . The federal act does not eliminate the defense of assumption of risk (except as it involves the violation of a federal statute) ; all of the former effects of this doctrine remain as they were at common law: *Seaboard Air Line v. Horton* [233 U. S. 492], p. 503; *Jacobs v. Southern Ry.,* 241 U. S. 229, 235; *Boldt v. Pa. R. R.,* 245 U. S. 441, 445."

Plaintiff in the instant case produced no evidence whatsoever that the freight car in question was stored on the siding at Baxter in any but the normal and ordinary manner, or that its being placed there exposed him to any unusual hazard with which he was not thoroughly familiar. It in no way protruded into the highway or the main track of the railroad over which the train was travelling. The testimony clearly shows that this car was placed as far from the highway as the derail on the spur track would permit. Moreover, plaintiff was engaged on his regular run, was thoroughly acquainted with the siding and its use, and was, at the time he received his injuries, in charge of a train from which he was about to have placed other freight cars on such siding. He assumed, therefore, under such circumstances, any incidental risks, even though he may not have had actual notice that the car was on the siding at the time: Roberts, Federal Liabilities of Carriers (2d ed.) V. 2, section 831.

It is admitted by plaintiff that at the time the train left the terminal that morning, it was equipped with standard lights and with better than a standard whistle, both of which had long proven effective under regular conditions. Plaintiff's case is devoid of any evidence from which even an inference could be drawn that the storing of the car on the siding caused any irregular condition whatever which could possibly have rendered these lights and whistle inadequate. Moreover, the rules of defendant railroad required that a man and at least one white light be upon the leading platform of the caboose. That this rule was fully complied with is clearly shown by plaintiff's own testimony. It discloses that two brakemen were on the platform of the caboose, one of whom alighted at the switch about 57 feet from the crossing, the other remaining. Plaintiff, who had been in the caboose making out reports, also came out upon the rear platform when the train was about 25 feet from the highway. There were two white lights on the platform and

on each roof corner of the caboose at the leading end was a marker light or lantern with green and red colored lenses. Furthermore, the whistle was sounded about 250 or 300 feet from the crossing and could be heard for at least a half mile. Thus, it clearly appears from the record that the lights and whistle on the caboose were adequate, and that the presence of the freight car on the siding in no way whatever was connected with this accident. The sole cause of this unfortunate collision was the negligence of the driver of the Hannon truck who approached the crossing at thirty or thirty-five miles an hour and ran upon it without the slightest effort to stop, look and listen.

The learned trial judge, in his opinion refusing judgment n. o. v. and a new trial, stated as the reason for his action that "The jury could well conclude that the injury to the plaintiff was partly due to the failure of the plaintiff's fellow-employees to properly perform their duties." This statement was clear error under the pleading and the proof. There is no allegation in the statement of claim that plaintiff was injured by the negligence of fellow-employees, and the trial was entirely free of any evidence, offered for such purpose, upon which the jury could base such a conclusion. In fact, the learned trial judge refused plaintiff's motion for leave to amend his statement of claim so as to include an allegation of negligence on the part of his fellow-employees, and then eliminated from his oral charge that portion dealing with the possible negligence of the brakeman in sounding the warning of the train's approach to the crossing. The court could not have granted the motion, since it would have introduced a new cause of action after the Statute of Limitations had run: *Andrews v. Marsden*, 278 Pa. 56, 58-59; *Martin v. Pittsburg Rys. Co.*, 227 Pa. 18, 20-21. But to have relied upon it, and used it as the reason for supporting the verdict, it being the only possible ground available to prevent judgment for defendant railroad, was error.

Therefore, since there was no negligence upon which to base a recovery, the learned court below should have entered judgment for defendant company, notwithstanding the verdict. Before arriving at this conclusion we gave plaintiff the benefit of every fact or inference of fact in the case, and resolved all doubts arising out of the evidence in his favor: *Anstine v. Penna. R. R. Co.*, 342 Pa. 423, 425.

Judgment reversed, and here entered for defendant railroad company.