Alex N. BELL, Appellant,

v.

COMMERCIAL INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
a corporation.

No. 13000.

United States Court of Appeals
Third Circuit.

Argued March 21, 1960.

Decided July 7, 1960.

Samuel Avins, Pittsburgh, Pa., for appellant.

Sanford M. Chilcote, Pittsburgh, Pa. (Randall J. McConnell, Jr., Dickie, Mc-Camey, Chilcote & Robinson, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

This diversity action brought by an insured (Bell) against his insurance company (Commercial) is the aftermath of a lawsuit arising out of an automobile accident in which Bell was the defendant and the injured parties obtained judgment against him in the amount of $24,000. Bell was defended by Commercial pursuant to its obligation under the insurance contract, which contained the usual provision requiring it to defend and reserving to it the right to make such investigation, negotiation and settlement as it deemed expedient. Bell, however, was short not only in driving skill but also in insurance protection, for the dollar limit of his insurance applicable to the particular judgment was $10,000, which, with certain additions, was paid by Commercial to the injured parties. The balance, according to the averment in this case, amounting to $13,-433.33, with interest, is the subject matter of the instant complaint by Bell. The gravamen of his charge against Commercial is that in the handling of the defense it was negligent, and that it acted in its own interest, in bad faith and in disregard of his interests.

In due course, Bell's case came to trial. At the conclusion of all the evidence, the court below directed a verdict for the defendant. In the court's view, Bell had failed to produce "clear and convincing" evidence of Commercial's bad faith. Bell's post-trial motions were denied, and this appeal followed.

The primary issue is whether Bell adduced enough evidence to warrant submitting his case to the jury. We are of the opinion that he did, and that the judgment of the court below must be reversed.

The nature of the obligation of the insurer in a situation such as this, and its duties where its own interest conflicts with the interest of the insured, are not problems of easy solution, and indeed, local jurisdictions have reached differing results depending upon the choice of underlying theory. See Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136 (1954). For Pennsylvania, whose law applies here, the choice is specified in Cowden v. Aetna Casualty and Surety Co., 1957, 389 Pa. 459, 134 A.2d 223. The view taken is that the insurer must accord the interest of its insured the same faithful consideration it gives its own interest: since the interest of one or the other may be imperiled at the instant of decision, the fairest method of balancing the interests is for the insurer to treat the claim as if it were alone liable for the entire amount. The insurer is not bound to submerge its own interest, but the decision to expose the insured to personal pecuniary loss must be based upon a bona fide belief by the insurer,

predicated upon all of the circumstances of the case, that it has a good possibility of winning the lawsuit. The insurer does not have an absolute right to risk the insured's financial well-being; the insurer's obligation of good faith requires that the chance of finding non-liability be real and substantial and that the decision to litigate be honestly made. 389 Pa. at page 471, 134 A.2d at page 229.

In arriving at its decision in the Cowden case, the Pennsylvania Supreme Court noted the nature of the relationship between insured and insurer in this situation. In its view, the contract operates to create an agency relationship in its provision for the insurer's exercise of control over the disposition of claims against the insured within the policy limits whether by settlement or litigation. Both parties are recognized as having definite and separate interest in the disposition of such claims.

"And, where there is little or, as in the instant case, no likelihood of a verdict or even a settlement within the limits of the policy's coverage, the separate interest of the parties are in effect substantially hostile. *In such circumstances, it becomes all the more apparent that the insurer must act with the utmost good faith toward the insured in disposing of claims against the latter.*" 389 Pa. at page 470, 134 A.2d at page 228. (Emphasis supplied.)

In Cowden the determination was in favor of the insurer, for the reason that the insured failed to carry his burden, recognized under the law of Pennsylvania, to prove "bad faith" by "clear and convincing evidence" and not mere insinuation. 389 Pa. at page 472, 134 A.2d at page 229.

There are significant and substantial factual differences between the Cowden case and the one now before us. There, the personal injury action had been tried twice before and the liability of the insured, rather than the amount of liability, was the critical issue. The insurer was shown to have good reason to believe that its insured was not responsible, and that if a verdict were returned, it would be set aside. There did not seem to be much doubt that if a verdict were returned against the insured, it would exceed the policy limits. Moreover, on the third trial of the personal injury action, the insured was represented by his own counsel, along with counsel furnished by the insurer. It was shown by the insurer, that it had given careful consideration to the position of its insured at all times, and that its judgment in rejecting the claimants' offer of compromise was well founded.

■ In the instant case, Bell sought to show a lack of pretrial investigation which would have had a bearing upon settlement considerations. Although the trial judge insisted that Bell only showed that the claimants in the personal injury action had offered to settle for $25,000, there was testimony from Bell, which if believed, would support the conclusion that during the course of the trial a suggestion had been made by counsel for claimants which, if at least explored, could well have led to settlement within the policy limits, and that he had reported this to the insurer's counsel. Bell was not represented. He testified that he was told such representation was not necessary. And his testimony would further indicate that he was under the impression that the insurer's counsel was representing him insofar as an issue of settlement was concerned. It also appears that the issue in the personal injury action was not primarily whether Bell was liable, but how much of a verdict the jury would return. Indeed, counsel for the insurer practically conceded at pre-trial, and even on the witness stand in this action, that there was no real issue as to liability. The insurer evidently took the position that the offer of $25,000 was beyond the policy limit, made no counteroffer, and did not attempt further negotiations looking toward settlement. Although the insurer concluded that a verdict would not be returned for $25,000, it does not appear that it had reached, at least for

communication to Bell, a conclusion as to what the case might be worth for settlement purposes. The insurer's counsel did testify at one point that he thought the verdict would be well within the policy limit, which, as stated, was $10,000, but even *prior to trial* it was apparent that the claimant's special damages reached almost $6,000.

On this showing, we can reach no other conclusion than that the district judge erred in refusing to submit the matter to the jury. Snyderwine v. McGrath, 1941, 343 Pa. 345, 251–52, 22 A.2d 644.[1] Stress is placed by the insurer upon the fact that Bell was in attendance at the trial and participated in discussions with the insurer's counsel. We do not mean to imply that this would not have a bearing before the trier of facts, but the trier of facts in a jury case is not the judge.

■ Because the case will have to be tried again, we note that Bell has raised additional points relating to the rulings made in the court below with respect to his right to examine certain records of the insurer under Rule 34, F.R.Civ.P., 28 U.S.C., as well as rulings on the admissibility of certain evidence in the court of the trial had. With respect to the latter, we are content to say, except in the one instance which we shall mention, that these depend upon the course of the proceedings, and it would be futile to anticipate what will again happen. In the one instance, Bell sought to show that at a pre-trial conference before the personal injury action, the presiding judge had said "This is the kind of a case a plain-

tiff's lawyer dreams about. * * * As I evaluate it, there is no question about the liability, it is just a question of an amount of money. * * * The defendant is admitting liability. * * * In substance they are." In this connection, it is pertinent to note that counsel for the insurer stated at the trial of this case that at the aforementioned pre-trial he also believed a verdict would be returned against Bell. While the portion of the pre-trial judge's statement concerning dreams might well be excluded, it would appear that the balance of the statement has a bearing on the issue raised in this case.

■ With respect to the discovery sought under Rule 34, of the insurer's records pertaining to the personal injury action, we entertain no doubt but that it should have been permitted. Practically, the insurer is in an unenviable position. While it prefers to maintain the privacy of its communications and records, its failure to make them available certainly permits inferences against the company by judge and jury. It can hardly be denied that, whether such records would be admissible as evidence, they are relevant and germane, could reasonably lead to the discovery of admissible evidence, and would certainly be of assistance to Bell in the preparation of his case. We do not mean this to be a categorical statement as to what constitutes "good cause" under the Rule. But coupling these with the "agency relationship" existing between the insured and the insurer as indicated by the Court in the Cowden case,[2] which alone would

---

1. See also Nanty-Glo Borough v. American Surety Co., 1932, 309 Pa. 236, 238, 163 A. 523.

   In Tapler v. Frey, 1957, 184 Pa.Super. 239, 244–45, 132 A.2d 890, 893, it was said:

   "'* * * the phrases 'clear, precise and indubitable' or 'clear and convincing' or 'clear and satisfactory' as used in these type of cases have a technical meaning which is that the witnesses must be found to be credible, that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, and that their

   testimony is so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."

2. "While the contract is primarily one of indemnity, it operates at the same time to create an *agency relationship* in its provision for the insurer's exercise of control over the disposition of claims against the insured (within the policy's limits) whether that be by settlement or litigation." 389 Pa. 459, 469–70, 134 A.2d 223, 228. (Emphasis supplied.)

seem to furnish adequate ground for compelling the discovery, leads us to the conclusion that Bell was and is entitled the discovery requested.

For the reasons stated, the "Order for Judgment" of the court below will be reversed and the cause remanded for further proceedings not inconsistent herewith.