Charles LaROCCA, Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

Civ. A. No. 105–68 Erie.

United States District Court,
W. D. Pennsylvania.

July 29, 1971.

See also D.C., 47 F.R.D. 278.

MacDonald, Illig, Jones & Britton, Erie, Pa., for plaintiff.

Knox, Graham, Pearson & McLaughlin, Erie, Pa., for defendant.

## FINDINGS AND OPINION

WEBER, District Judge.

This is a diversity action between plaintiff LaRocca, a Pennsylvania citizen, and State Farm Mutual Automobile Insurance Company (herein called State Farm), an Illinois corporation. During the relevant period State Farm insured LaRocca under an automobile liability insurance policy with maximum limits of $50,000 for one person and $100,000 for one accident. LaRocca seeks in this action to recover from State Farm the liability in excess of $50,000 imposed upon him by a judgment for damages entered in this court under the following circumstances.

On October 16, 1966, LaRocca was driving south on Pa. Route 89, a through highway, and Richard Lewkowicz was driving eastwardly on a public road which intersects Route 89 at a point where a "Stop" sign controls traffic entering Route 89. The two automobiles collided in Route 89 near the intersection and Lewkowicz received injuries resulting in death. The Lewkowicz estate engaged counsel within a few days.

LaRocca promptly reported the accident to State Farm, denying liability, and it undertook its obligation of defense. At all times during the investigation of the case, the criminal trial and civil trial and in this proceeding, LaRocca has denied negligence, excess speed or other grounds of liability.

On January 1, 1967, LaRocca was charged by state authorities with involuntary manslaughter as a result of the accident. In the defense of that charge he retained the same personal counsel as represented his excess liability exposure in the civil suit. After a jury trial in September 1967 he was found not guilty of the charge.

On February 16, 1967, a civil law suit was instituted in this court at No. 9–67 Erie seeking damages under the Pennsylvania Wrongful Death Act and the Pennsylvania Survival Act for the death of Richard Lewkowicz. The ad damnum clause on each count demanded damages of $450,000 (a practice now prohibited in this District Court). At about the time of filing the complaint the attorney for the estate was told by the adjuster for State Farm that the company couldn't give him a "dime" for the claim.

State Farm employed able and experienced counsel to defend LaRocca in this suit and an appearance and answer were filed and LaRocca was defended by said counsel at all stages of the proceedings.

On March 6, 1967, LaRocca was informed by a letter from State Farm that they had forwarded the file to their counsel who would give the case all the necessary preparation. The letter, known in the insurance industry as an "excess letter", informed LaRocca that the amount claimed was in excess of the limits of protection afforded by the policy and in view of his possible personal liability LaRocca was free to secure counsel of his own choosing to represent himself personally in addition to the counsel engaged by the insurance company.

LaRocca engaged as his personal counsel the same counsel that was representing him in the pending criminal case. LaRocca's counsel's representation in the civil claim was separate from and over and above his activities in the defense of the criminal charge, and continued after LaRocca was acquitted of the criminal charge, by attendance at depositions, arguments, as well at attending and participating in the trial of the civil case, although he did not enter a separate appearance for LaRocca. The trial judge was aware that LaRocca's personal counsel was representing him with regard to his excess liability exposure.

LaRocca's personal counsel had been informed that the policy limit was $50,000. At the pretrial conference when coverage was discussed the insurance company's counsel reported that he had been informed of the $50,000 limit by LaRocca's personal attorney but at this time the insurance company counsel had neither requested nor received confirmation of this figure. This amount of coverage was confirmed to its counsel by State Farm telephonically on the following day and by letter two days later.

About three and one-half months after filing the complaint in the death action, the attorney for the Lewkowicz estate amended the complaint to add several new parties-defendant, these being business entities in which LaRocca was employed or interested as a partner alleging their liability because of his agency for them. He told his clients that this increased the insurance available for payment of damages. LaRocca's private counsel entered an appearance for all partners in two partnership entities which had been joined as defendants and represented them during trial.

LaRocca's personal counsel worked closely with the State Farm counsel and the State Farm investigator in investigations and discovery depositions, both before and after the criminal trial. By the time of the pretrial conference on February 7, 1968, all witnesses and evidence that were later produced at trial were known to both counsel.

When the case was scheduled for trial by the trial judge, a motion for continuance was filed and, at the request of the trial judge, it was heard by the writer of this Opinion on January 29, 1968. At the conclusion of the argument the writer asked if there were any possibilities of settlement. Counsel for State Farm stated that he had never received a settlement demand. Counsel for the Lewkowicz estate stated that he had never been asked for a settlement demand but if a demand was being requested, it was $150,000. State Farm's counsel said that this was too high. LaRocca's personal counsel as well as the State Farm counsel was present. The Lewkowicz counsel did

not know the policy limits at that time, and this was prior to the amendment to the Fed.R. of Civ.P. discovery rules making such information clearly discoverable, although at the time members of this court had often ordered disclosure of policy limits in aid of settlement. However, discussion at the Pretrial Conference of February 7, 1968, at the inquiry of the trial judge, revealed policy limits of $50,000 by LaRocca's personal counsel, which the State Farm counsel was unable to confirm at that time. At no time did the Lewkowicz counsel demand to have coverage revealed or confirmed, or make any suggestion that disclosure of policy limits would reduce his demand.

At about the time of beginning of trial counsel for the Lewkowicz estate stated that he reduced his settlement demand to $125,000. There was no offer from either State Farm counsel or LaRocca's personal counsel.

At the Pretrial Conference counsel for the Lewkowicz estate stated his intention of offering expert actuarial testimony to support a claim for damages in excess of $500,000 and other evidence of loss of support and loss of future earning power to support an award of $200,000. His demand was supported by the prospects of holding the additional defendants also liable on agency theories, and discounted by his inability to use a favorable witness on the agency issue. It was in his opinion a reasonable settlement demand. His demand was not stated in terms of absolute finality or non-negotiability. There was no responsive offer from State Farm or LaRocca's personal attorney up to the opening of trial.

The civil trial began April 2, 1968 before the trial judge non-jury. It lasted two days. On the second day of trial LaRocca's personal attorney requested the State Farm attorney to offer policy limits. State Farm counsel replied that he had no authority to do so. This was the first time such a request was made to State Farm counsel. Toward the close of trial on the second day, while the other defendants were still involved, an inquiry was made by the State Farm coun-

sel to Lewkowicz's counsel as to whether the Lewkowicz estate would settle for $100,000 if that amount could be raised by contributions from the various parties-defendant in the case. The Lewkowicz counsel said that he would discuss the matter at the end of the day's session. The testimony concluded shortly thereafter, the other parties-defendant were granted their motions for directed verdicts and LaRocca remained the sole defendant. The trial judge indicated his tentative conclusion on liability but set final argument on liability and damages for a later date. No response to the suggestion of settlement was made.

Before the trial of the case LaRocca had asked the State Farm counsel if the case could be settled. State Farm counsel asked LaRocca how they could do this when the Lewkowicz demand was $150,000 and we have only $50,000 coverage. LaRocca made no offer to contribute to an excess settlement. Although LaRocca's personal counsel had discussed with LaRocca the possibility of LaRocca contributing some amount to a settlement above the policy limits prior to the trial, and had discussed the possibility with Lewkowicz's counsel, he did not inform State Farm counsel of this prior to trial or at the time he requested State Farm to offer policy limits on the second day. No offer to contribute by LaRocca was made to State Farm counsel until shortly before final arguments on May 10, 1968 when LaRocca agreed to contribute $10,000 over the coverage to a settlement. LaRocca's counsel consulted with State Farm counsel and then approached the Lewkowicz counsel to see if the case could be settled for $60,000 which suggestion was rejected.

On May 10, 1968, after hearing arguments on liability and damages, the trial judge announced a tentative conclusion that damages would be in excess of $100,000. Settlement talks were held in chambers before the trial judge, LaRocca's counsel stated that he would contribute $10,000 and the trial judge observed that he would probably not now approve a settlement of $60,000.

By letter of May 13, 1968, to plaintiff's counsel State Farm counsel formally offered to pay the policy limits of $50,000 along with assured's contribution of $10,000. This was refused.

At no time did the counsel for the Lewkowicz estate make any demand or offer of settlement for the policy limits of $50,000 or less. The lowest figure demanded was $125,000. There was no suggestion that he would reduce his demand if policy limits were offered. There was no change in his demand after the co-defendants were dismissed.

On June 6, 1968 the court entered judgment against LaRocca in the sum of $198,210.50.

Liability in this case was always a contested issue. Both the State Farm counsel and LaRocca's personal counsel believed there was a substantial chance for a successful defense. The decedent had entered a through highway in face of a stop sign. Despite LaRocca's acquittal of involuntary manslaughter the higher standard of burden of proof and the higher degree of negligent conduct required nevertheless indicated a contested issue. At the criminal trial there had been an effective refutation of the testimony of the investigating state police officer and an exclusion of certain unfavorable evidence concerning skid marks allegedly left by LaRocca's car. There was a statement from Lewkowicz's widow, a passenger in his car who survived the accident, that corroborated LaRocca's denial of excess speed. A weighty element in the trial judge's verdict was his view of the accident scene during the trial which gave him a different view than that produced by testimony and photographs. The presumption of due care in favor of a decedent plus the corroborating testimony of the wife passenger that he had stopped before entering the intersection eliminated the issue of deceased's contributory negligence, in the absence of any other evidence leading to this conclusion, when the view established that one stopping at the intersection would not see any one approaching from the north in time to avoid

a collision if that vehicle were approaching at an excessive rate of speed because of the intervention of the crest of a hill in that direction.

This is a diversity action in which the law of Pennsylvania applies. The controlling Pennsylvania law on the question has been extensively reviewed in Cowden v. Aetna Casualty and Surety Co., 389 Pa. 459; 134 A.2d 223 [1957]:

"It is established by the greatly preponderant weight of authority in this country that an insurer against public liability for personal injury may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation in the policy, if the insurer's handling of the claim, including a failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its contractual duty." p. 468, 134 A.2d p. 227.

In the Cowden case the matter was tried three times. A verdict for $100,000 had been set aside because it was contrary to the great weight of the evidence on liability. The policy limit was $25,000. The damages pleaded was $75,000. Cowden was advised that he might seek to employ private counsel to protect his personal interest above the insurance limits. During the course of the third trial, Cowden's private counsel solicited a settlement offer from the plaintiff's counsel which would require the insured to pay full coverage and the insured to contribute $10,000 from his own funds. Cowden's counsel advised the insurance company counsel that the matter might be settled by payment of full coverage plus $7,500 from the insured; offered to contribute $7,500 and requested the insurance counsel to negotiate along these lines and pay the full coverage. The letter of private counsel also warned that a failure of Aetna to settle would result in Cowden holding Aetna responsible for any amount that Cowden might be obliged to pay. After a conference between the insurance company and its counsel it was determined to proceed with trial. No reply was given the insured's personal counsel. Later in the trial Cowden's private counsel offered to contribute $10,000 which, if full coverage was paid, would meet plaintiff's demand. Again this was considered and rejected upon the insurance company counsel's opinion that there was no liability. A verdict far in excess of coverage was returned, and Cowden sought to recover the $35,000 that was required to be paid over and above the $10,000 that he was willing to pay.

We make this detailed recital of the facts of Cowden largely because of the presence of an offer of settlement within the policy limits plus the personal contribution of the insured. Nevertheless the trial court found that there was not sufficient evidence of bad faith in the defendant arriving at the decision to proceed with trial, to justify a jury's finding of liability, and a verdict for Cowden was set aside on a N.O.V. judgment for defendant. The Pennsylvania Supreme Court stated:

"*  *  *  *  bad faith, and bad faith alone (emphasis by the court) was the requisite to render the defendant liable." Pp. 471–472, 134 A.2d p. 229.

■ It is bad faith in settlement negotiations and not solely the existence of an offer to settle within policy limits that imposes liability.

Two cases illustrate this distinction. In Gray v. Nationwide Mutual Insurance Co., 422 Pa. 500, 223 A.2d 8 [1966], the lower court sustained a demurrer to an allegation of refusal to accept an offer to settle within the policy limits, but the Supreme Court of Pennsylvania reversed saying that the allegation of bad faith refusal to accept an offer to settle within the policy demands is sufficient to sustain the complaint. Similarly Shaw v. Botens and Nationwide, 403 F.2d 150 [2nd Cir., 1968] applying Pennsylvania law, sustained a pleading of bad faith to settle within the policy limits.

■ We note that in both cases there existed an offer to settle within the policy limits which was refused, but we

conclude that this bare allegation would not be sufficient to sustain a complaint because it is well established that an insurance carrier is under no absolute duty to settle a claim when a possible judgment against the insured may exceed the amount of the insurance coverage. Schmidt & Sons Brewing Co. v. Travelers Insurance Co., 244 Pa. 286, 90 A. 653; Cowden v. Aetna Casualty & Surety Co., 389 Pa. 459, 134 A.2d 223 [1957].

While *Cowden* states that liability may be imposed "if the insurer's handling of the claim, *including a failure to accept a proffered settlement,* was done in such a manner as to evidence bad faith * * *" (emphasis supplied) (p. 468, 134 A.2d p. 227) it is almost without exception in the Pennsylvania cases that the existence of the offer of settlement within policy limits provides the arena in which the good faith of the insurer is to be tested. Unless there is present some other element of negligence, fraud, or breach of fiduciary duty, how is the good faith of the insurance carrier to be tested except in a situation where it must decide to settle at the demand figure, thereby protecting its insured's interest against excess liability, or refuse the demand and subject itself and the insured to the risks of liability. "The predominant majority rule is that the insurer must accord the interest of its insured the same faithful consideration it gives its own interest." Cowden, supra, at p. 470, 134 A.2d at p. 228 (citing Keeton, "Liability Insurance and Responsibility for Settlement", 67 Harward Law Review 1136 [1954].

When no offer of settlement is available, and no prospect of settlement is apparent by the offer of policy limits, a mere tender of the policy limits without securing the release of the insured has no effect. The insurance carrier still has a duty to defend and the insured still faces the prospect of liability for the excess amount of the verdict.

The element of an offer to settle was present in the first Pennsylvania case to consider the question of liability of an insurance carrier for an excess verdict, Schmidt & Sons Brewing Co. v. Travelers Insurance Co., 244 Pa. 286, 90 A. 653 [1914], where an offer to settle for policy limits plus an agreed contribution was refused, and a higher verdict resulted. A demurrer to a complaint against the insurance company was sustained on the grounds that the insurance contract gave sole control of the defense to the insurance carrier.

The cases in Pennsylvania where liability for an excess verdict was imposed the absence of a refusal to accept an offer of settlement within policy limits are rare, but they illustrate other examples of bad faith dealing on the part of the insurance carrier.

Perkoski v. Wilson, 371 Pa. 553, 92 A.2d 189, the requirement of good faith in the conduct of the defense was first imposed, but in a factually different situation. No offer of settlement was refused, but after verdict and judgment the insurance company attempted to limit its liability on part of the verdicts without having warned its insured beforehand of his possible exposure, and after the insurance company's counsel had itself permitted the apportionment of the verdicts which exposed insured to non-coverage.

In Bell v. Commercial Insurance Company, 280 F.2d 514 [3rd Cir., 1960], the District Court directed a verdict for the defendant on the grounds that the insured had failed to produce clear and convincing evidence of bad faith. Taking its Pennsylvania law from *Cowden*, supra, that the test was bad faith, the Court of Appeals found "significant and substantial factual differences" between *Bell* and *Cowden*. In *Cowden* the case had been tried previously and liability was a critical issue, whereas there was little contest as to liability in *Bell*. In *Cowden* the insured was also represented by his own counsel, *Cowden* showed a full and careful consideration of the position of its insured at all times. On the other hand testimony in *Bell* showed that the insured had no separate counsel, that he was told that he didn't need separate counsel, and that a suggestion had been given him by claimant's counsel that, if explored, could have led

to settlement within the policy limits and that he had reported this suggestion to the insurer's counsel. The insurance company made no counter-offer to a demand of $25,000 in face of its $10,000 limit coverage and did not attempt further negotiations toward settlement.

The Court of Appeals held this sufficient to submit the question of the insurance company's good faith to the jury and ordered the matter retried. The Court of Appeals also noted its disagreement with some of the pretrial discovery rulings made by the trial court which unduly restricted Bell's right to discovery so that these could be reconsidered in the retrial of the case.

Aside from the two cases above-mentioned, the Pennsylvania cases have found sufficient evidence of bad faith to allow submission of an excess liability claim to the jury only where the evidence revealed the existence of a proffered settlement at or within the policy limits (or at the policy limits in addition to what the insured or other parties agree to contribute). Cowden v. Aetna Casualty & Surety Co., 389 Pa. 459, 134 A.2d 223 [1957]; Gray v. Nationwide Mutual Ins. Co., 422 Pa. 500, 223 A.2d 8 [1966]; Shaw v. Botens and Nationwide, 403 F.2d 150 [2nd Cir., 1968].

As Judge Dumbauld of this court has said:

"The event constituting breach of the fiduciary duty to handle settlement negotiations in good faith is the refusal to accept a settlement offer which would be reasonably advantageous to the insured in the light of all circumstances known at the time." Gedeon v. State Farm Mutual Auto Ins. Co., 261 F.Supp. 122, p. 123 [W. D.Pa.1966]

"Searching the record in the case at bar to determine when, if ever, such an offer of settlement was unreasonably refused by the insurer, we find that no such event ever occurred. There never came a time when an offer of settlement within the policy limits was made to and refused by the insurer." Gedeon, supra. p. 124.

This is not only the Pennsylvania experience, it is the overwhelming result in all state and Federal jurisdictions. In 40 A.L.R.2d 168, Annotation "Duty of liability insurer to settle or compromise", supplemented in A.L.R.2d Later Case Service through 1971, an extensive review of cases from all jurisdictions is presented, and in § 20. "Comparison of results in light of amounts involved," p. 220, the cases are individually analyzed by comparison of policy limits, settlement demand and verdict. In over fifty such cases so reported in § 20(a) where an insurer was held liable, the demand for settlement was at or below the policy limits. In § 20(b) a similar number of cases are so analyzed where refusal to settle a demand within policy limits did not impose liability on the insurer for an excess verdict.

There is no evidence in this case of any offer of settlement by the claimant within the policy limits, or within the limits of the policy plus what additional amounts the insured or other defendants offered to contribute. The lowest specific demand of the claimant was $125,000 or two and one-half times the policy limits. There was no suggestion that anything could be accomplished by the disclosure or offer of policy limits. The size of the demand, the range of possible verdict, the presence of other defendants who could contribute, and the possibility of individual assets of the insured available for execution indicated that it was highly unlikely that the Lewkowicz counsel would consider a policy limit settlement that would free LaRocca from excess liability.

█ Even where there has been a refusal to accept a settlement offer within policy limits the existence of bad faith in refusing to accept the settlement offer within the policy limits, (or within limits plus contribution), must be shown by clear and convincing evidence, *Cowden*, supra, p. 472, 134 A.2d 223.

Plaintiff argues most strongly the case of Young v. American Casualty Co., 416 F.2d 906 [2nd Cir., 1969], where recovery was allowed under New York law.

The case was submitted to a jury which found for the insured plaintiff, which finding the Court of Appeals affirmed by stating:

"There was substantial evidence from which the jury could have concluded that American acted in bad faith in failing to settle within the policy limits by not entering into settlement negotiations, and by not informing the insureds of the possibility of settlement."

That case presented the following facts:

1.  Policy limits of $20,000.

2.  An "excess letter" advising the insureds that the amount claimed exceeded their insurance coverage and that they had the right to have their own attorney sit in the case with the insurance company counsel.

3.  Advice by the insurance company counsel to the insured that the "excess letter" was a form letter, that it was not absolutely necessary for them to retain independent counsel, and that such counsel's role would be that of an observer.

4.  Failure of the insurance carrier to interview the insureds or other employees of the business as possible witnesses before trial, or review insured's business records, prior to trial.

5.  An offer by the claimant's counsel to insurance counsel to settle for $40,000 which was not communicated to insured and no reply by the insurance counsel.

6.  No discussion of possible settlement by insurance counsel with insureds or requests that they contribute to settlement by the insurance company.

7.  Expert testimony that in the context of this claim an insurance company would endeavor to settle by revealing its lower coverage, and revealing defenses to liability.

These elements vary greatly from the case at bar. In the present case there was:

(1) No attempt to dissuade the insured to engage independent counsel.

(2) Active participation in all stages of preparation and trial by assured's independent counsel.

(3) Full knowledge of all settlement offers by insured's independent counsel.

In the *Young* case the court recited four bases for a finding of bad faith under New York law; (p. 910)

"1.  The failure of the insurer to investigate properly the circumstances of the accident."

There is no evidence of any such failure on the part of State Farm or its counsel in this case.

"2.  The refusal of the insurer to accept a settlement within the limits of the policy."

No settlement within the limits of the policy was ever offered here.

"3.  The failure of the insurer to inform the insured of a compromise offer."

LaRocca's counsel was present at every settlement demand and even sought to secure further settlement offers by his own participation.

"4.  The failure of the insurer to attempt to induce contribution by the insured."

The insured here was represented by his own counsel at all stages, was aware of all demands, was aware of his own coverage, discussed possible contribution with his independent counsel, but made no firm commitment until after the trial but before the entry of judgment. The control of the excess liability was not in the hands of State Farm here, but in the hands of LaRocca.

In commenting on the facts of liability in *Young* the Court concluded:

" * * * Any doubt which admittedly exists in speculating on these possibilities should be resolved in favor of the insured unless the insurer, by some affirmative evidence, demonstrates that not only was there no realistic possibility of settlement within the policy limits, but also that the insured would not have contributed to whatever settlement figure could have been obtain-

ed. There was no basis for American to act as if settlement was foreclosed by the initial demand of (claimant's) counsel for $40,000." (p. 911).

This case reveals no evidence that the claim could have been settled within any resources available to the insurance company. The plaintiff's ad damnum clause, admittedly of little value but nevertheless a warning, was for $900,000 damages. The actuarial witness was prepared to testify to damages exceeding $500,000.

We think a basic premise of LaRocca's present claim is that the Lewkowicz case was settleable by some action of the insurance company including the offer of its entire policy coverage. Any bad faith of the insurance company must be shown by its failure or refusal to do some act that would have relieved LaRocca of liability to pay an excess verdict (or an excess over which he agreed to contribute). The record is bare of such evidence. In fact the logical inferences from the evidence indicated that no act of the insurance company would have effected such a result.

The assumption that the case was settleable by the offer of insurance limits is contradicted by the evidence in the case. Counsel for the Lewkowicz estate was not naive, simple, nor lacking in diligence or courage. The record shows otherwise. He was as well known to the State Farm counsel and the LaRocca counsel as he is to the court. He was aware that he had a case which, if liability was established, could command a high verdict. He was aware that the facts of the accident, the physical impact, and the testimony of witnesses would establish high speed on the part of LaRocca. He was aware of LaRocca's business connections, which provided him with possible additional insurance coverage and possible assets to cover an excess verdict. There is no indication that he was anxious to discover LaRocca's insurance coverage as an element in his demand, or that on learning it unofficially he was anxious for confirmation in order to modify his demand. He accepted the disclosure at the Pretrial Con-

ference by LaRocca's counsel. The trial judge, who testified in this proceeding, stated that when the $50,000 limit was discussed at the pretrial, "of course he wasn't interested in the $50,000."

In addition, the Lewkowicz counsel had a clear indication that he could secure $50,000 policy limit at any time that he could secure a proper excess contribution from LaRocca because the LaRocca counsel was discussing the possibility of an excess contribution by LaRocca to effect a settlement. These negotiations took place between LaRocca's counsel and Lewkowicz's counsel for several months prior to trial.

Most striking was the testimony of the Lewkowicz counsel in this proceeding. He was produced by the plaintiff. He has a financial interest in the outcome of this proceeding because his client's judgment against LaRocca remains largely unpaid. While he stated that his demand of $125,000 was not final and he was always willing to negotiate, he was not asked and did not testify that he would have settled or recommended settlement if the $50,000 policy limits were offered, plus a definite amount offered by insured. If the Lewkowicz demand was negotiable, it was only negotiable by whatever sum LaRocca could offer above the insurance coverage.

In such a situation the tables are turned, and the insurance company counsel cannot make a definite offer of policy limits without prejudicing the insured's chances of negotiating a settlement on the excess liability. To have offered the policy limits while LaRocca's counsel was attempting to negotiate an excess settlement would have subjected State Farm to the charge that it was acting in bad faith by protecting its own interest rather than the insured. See Keeton, op. cit. p. 1149.

## CONCLUSIONS OF LAW

■■ The court has jurisdiction of this matter. The insurance policy contract between plaintiff and defendant created a fiduciary relationship between the parties. By its notice to plaintiff of liability asserted against him above the

limits of the policy, and the retention by plaintiff of private counsel to represent him with respect to his excess liability, defendant disclaimed any right of control over the settlement of excess liability. Plaintiff accepted this disclaimer by hiring independent counsel and conducting negotiations with the claimant with regard to settlement of the excess liability. There was no absolute duty on the part of defendant to offer its policy limits toward settlement. There is no proof in this case that the offer of the policy limit would have settled the claim.

Plaintiff has failed to carry the burden of proof by clear and convincing evidence that defendant was guilty of bad faith in failing or refusing to settle the claim by the offer of its policy limits or by any other act or acts in the preparation, trial or settlement negotiations in the action brought by the Lewkowicz estate against the within plaintiff.

The defendant is entitled to judgment in this proceeding.

The foregoing Opinion constitutes the findings of fact and conclusions of law of the court in this matter tried before the court without jury.