**Glindon ASHBROOK, Plaintiff,**

v.

**Carl D. KOWALICK, Defendant,**
**and**
**Volkswagen Insurance Company,**
**Garnishee.**

**Civ. A. No. 41867.**

United States District Court,
E. D. Pennsylvania.

Sept. 27, 1971.

Stephen M. Feldman, Feldman & Feldman, Philadelphia, Pa., for plaintiff.

John J. Connors, Jr., Emas, Cohen & Connors, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

FULLAM, District Judge.

Plaintiff was a passenger in an automobile which left the road and struck a bridge abutment. The defendant's answer admitted negligence on the part of the driver; the only defense pleaded

was assumption of risk on the part of the plaintiff.

Plaintiff moved for summary judgment on the issue of liability. This was at first denied, because the record was incomplete; but later granted. Thereafter, the case proceeded to trial of damages.

At the first trial, the jury returned a verdict in favor of the plaintiff in the sum of $55,000. I granted a new trial on the ground that this verdict was inadequate. However, at the second trial, the jury returned a verdict in the sum of $60,714, which became the final judgment when no post-trial motions were filed by either side.

The defendant's liability insurance policy was limited to $10,000. In the present garnishment phase of the litigation, plaintiff is seeking to recover the balance of the judgment from the insurance company, on the theory that the company was guilty of bad faith in failing to settle the action within the policy limits when it had an opportunity to do so.

The trial of the garnishment was quite brief. The evidence consisted almost entirely of documents from the insurance company's file. Both sides had previously filed motions for summary judgment in the garnishment phase of the matter, claiming there were no factual disputes; however, I ruled at that time that the existence or non-existence of bad faith was an inference of fact, to be drawn by the jury, 332 F.Supp. 77.

The jury returned a verdict in favor of the plaintiff and against the garnishee insurance company. After the verdict was returned, I suggested to counsel that, in view of the lengthy procedural history of this litigation, the delays which had already occurred, and counsel's thorough familiarity with all aspects of the case, any post-trial motions should be filed within one week and promptly disposed of, without awaiting a reporter's transcript of the trial. Neither side voiced any objection to this procedure. Nevertheless, defense counsel has now filed a motion for an extension of time in which to set forth additional reasons for granting a new trial. The motion claims that counsel wishes to review the transcript of the charge in order to assert possible errors therein.

The charge was relatively brief. The factual and legal issues discussed were not complicated. What few objections counsel expressed at the time were either removed by a supplemental charge or were clearly without merit. The motion for a new trial already filed by the defendant challenges the Court's charge, and the rulings on defendant's points for charge, in several respects. I am satisfied that all significant issues have thus been raised, and that no useful purpose would be served by the further delay now sought. Accordingly, I shall proceed to dispose of the motions for a new trial and for judgment n. o. v.

Pennsylvania law relating to an insurer's duty in handling claims against its assured is set forth as follows in Cowden v. Aetna Casualty & Surety Co., 389 Pa. 459, 134 A.2d 223 (1957):

"[A]n insurer against public liability for personal injury may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation in the policy, if the insurer's handling of the claim, including a failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its contractual duty [to defend the action against the insured]."

*Id.* at 468, 134 A.2d at 227.

"[T]he fairest method of balancing the interests [of insurer and insured] is for the insurer to treat the claim as if it were alone liable for the entire amount."

*Id.* at 470–471, 134 A.2d at 228. *See also* Bell v. Commercial Ins. Co., 280 F. 2d 514, 515–516 (3d Cir. 1960).

Plaintiff's accident occurred on May 29, 1966. Promptly thereafter, the insurance company retained a local firm to

investigate the accident. This firm obtained statements from all of the witnesses, checked police reports, etc., forwarded a complete report to the insurance company, and "closed its file" in June, 1966.

Plaintiff filed suit in January of 1967. On March 7, 1967, after the answer had been filed, plaintiff's counsel wrote to defense counsel offering to settle the case for the policy limits of $10,000, stating that unless his offer was accepted within two weeks, it should be considered withdrawn. After receipt of this letter, and within the two-week period, the defendant did two things: (1) It wrote an "excess" letter to its assured, pointing out the possibility that a verdict might exceed the policy limits, and that he was at liberty to obtain his own counsel. No mention was made in this letter of the fact that plaintiff had already offered to settle within the policy limits.

(2) In addition, the company, through counsel, replied to plaintiff's offer by stating that it could neither accept nor reject the offer at that time, since it needed more information about the case. Plaintiff's counsel was advised that a full and complete investigation was then under way, and that the company would promptly be in touch with him upon completion of this investigation. In point of fact, the files of the company disclosed that no investigation was then being pursued by the insurance company, and no further action seems to have been taken until some time in May of 1967. Moreover, the company already had in its files a quite complete investigative report, as mentioned above.

In March of 1967, plaintiff took the deposition of the defendant driver. In May of 1967, the defense took the deposition of the plaintiff. In May or early June of 1967, the company obtained a further (unenlightening) statement from one of the eye-witnesses.

By this time, the company files reflect the following situation: The company knew that the plaintiff had been horribly disfigured in the accident; that he had been continuously confined in military hospitals for over a year, and had had eight or more separate surgical procedures performed; that there was some facial paralysis, with considerable uncertainty as to whether it would be permanent (it ultimately proved to be permanent); that plaintiff's counsel was asserting a claim on behalf of the United States government for medical expenses which already amounted to approximately $13,500; that the company's own investigators, and Pennsylvania counsel, had repeatedly advised that the case was worth a minimum of $50,000, and that a verdict could well exceed $100,000; that the testimony of the insured driver, and the statements of all known witnesses, totally eliminated any likelihood of being able to prove assumption of risk as a defense. Nevertheless, the company made no offer of any kind until February 27, 1968, after plaintiff's counsel had moved for summary judgment. At that time, and continuously thereafter, the company did offer to pay its policy limits, but plaintiff rejected the offer.

So far as the record discloses, the company has never informed its assured that plaintiff had originally been willing to settle for the policy limits. Moreover, while perhaps of no great significance at the present stage of the proceedings, it does not appear that the company ever advised its assured that the company, in its answer, admitted that the assured was negligent. The company's file also reveals considerable concern over whether it could successfully be charged with bad faith, but no mention is made of the interests of its assured, or the risks to which he was being exposed.

By reason of the foregoing facts, there is clearly no merit to the assertion that the verdict of the jury was against the weight of the evidence. I am likewise satisfied that it would have been error to direct a verdict in favor of the defendant-garnishee. This would have been proper only if, as a matter of law, the insurance company's eventual offer of the policy limits conclusively establishes lack of bad faith, or cancels

out bad faith theretofore existing; or if, as a matter of law, plaintiff's failure expressly to keep his settlement offer open beyond the initial two-week period requires the conclusion that the company did not have a reasonable opportunity to settle the case within the policy limits. I am convinced that none of these propositions can be declared as a matter of law.

While the company did offer the policy limits well in advance of trial, the offer came only after plaintiff had moved for summary judgment on liability, and long after the company knew that it had no defense, and that the ultimate recovery would certainly be greatly in excess of the policy limits. With respect to the limited duration of plaintiff's original settlement offer, the jury was instructed, in effect, that this was an unreasonably brief period of time, and that the insurance company could not be properly charged with bad faith for failing to settle during that period. Indeed, the jury was instructed that the company had a right to make further investigation, for a reasonable time, after plaintiff's settlement offer; and that the company had a right to defer making any settlement offer until after the plaintiff's deposition had been taken.

The jury's verdict, in view of the Court's charge, reflects a factual finding by the jury that it was unreasonable, and amounted to bad faith, for the company to delay making its offer during the period from May of 1967 until February 27, 1968, and that good faith handling of the assured's interests as well as the company's interests required some affirmative attempt by the company during that period to settle the case, or at least inquire as to whether it could still be settled. In this connection, it is significant that the company's file shows that its personnel and counsel were proceeding on the assumption that plaintiff's offer was still open. In fact, the company went so far as to inform its assured that the company had fully expected its February 27, 1968 offer of the policy limits to be accepted. Thus,

it is not surprising that the company was unable to persuade the jury that the company's failure to make any offer between May 1967 and February 27, 1968 was excusable because plaintiff's offer had already been withdrawn.

Defendant-garnishee argues that it was error to receive in evidence those portions of the company's file which came into being after February 27, 1968, the date when the company made its offer of policy limits. However, I adhere to the view that these documents were relevant and admissible. They shed considerable light on the issues of whether the company had its assured's interests in mind at any time, and whether the company believed that plaintiff's offer had been irrevocably withdrawn. These documents were also admissible in support of plaintiff's theory that the company's investigation was full and complete, at least by May of 1967; and that the company thereafter had no hope of obtaining evidence in support of its alleged defense, and made no attempt to do so.

Inasmuch as the issue of bad faith versus good faith was the key issue to be determined, I find no merit in the defendant's contention that "the learned trial judge unduly emphasized the question of bad faith in his charge to the jury." I believe the respective contentions of the parties were presented to the jury objectively. There is likewise no merit to the assertion that the Court failed to explain to the jury "that a reasonable delay in offering the policy limits is not bad faith." Not only was such an instruction given, it was the plaintiff who objected at the trial, claiming that the charge on this point was unduly favorable to the garnishee.

The defense complains that the Court erred in refusing its point for charge number 10: "While the defendant, Carl Kowalick, is in the military service, the law protects him from any enforcement of the judgment rendered against him in this case." Such an instruction, in my opinion, would have

been clearly erroneous. The company's obligation to handle the litigation in good faith does not depend in any degree upon whether its assured is a member of the Armed Forces. If the company breached its obligation towards its assured, the company is liable in the present proceeding for the additional legal liability thereby incurred by its assured, irrespective of whether the assured has actually paid this liability, or whether the liability is presently collectible from the assured. The amount of Kowalick's claim against the company is the amount of his personal liability; and it is this claim which the plaintiff may seize in the present proceeding.

The garnishee's motions for new trial and for judgment n. o. v. will be denied.