428 A.2d 635

Dorothy J. SHEARER

v.

Gerald B. REED and State Farm Mutual Automobile Insurance Company.

Appeal of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Sept. 11, 1980.

Filed April 16, 1981.

George F. Douglas, Jr., Carlisle, for appellant.

John R. Gavin, Oil City, for appellee.

Before CERCONE, P. J., and PRICE, SPAETH, HESTER, CAVANAUGH, BROSKY and WICKERSHAM, JJ.

SPAETH, Judge:

This is a garnishment proceeding to enforce a judgment recovered in a suit for personal injuries. The jury found that in refusing to offer to settle the suit for an amount within its policy limit, appellant insurance company had not acted in good faith. The only issue we need decide is whether the evidence was sufficient to support the jury's verdict. We have concluded that the evidence was sufficient, and shall therefore affirm.

The accident that led to this case took place early in the morning of July 2, 1969, outside of Clearfield, Pennsylvania. Gerald B. Reed, appellant's insured, was driving his automobile on a four-lane divided highway. Appellee was a passenger in an automobile driven by her son, Robert Owens, on a side road. As Owens entered the four-lane highway, he collided with Reed's automobile.[1]

Reed and Owens sued each other. Appellee sued Reed alone. Appellant—Reed's carrier—did not join Owens as an additional defendant in appellee's suit against Reed.

Before the three suits were tried, appellee's attorney wrote Reed, with a copy of his letter to appellant. The letter stated that if appellant would disclose the limit of Reed's policy, appellee's attorney would negotiate a settlement of appellee's claim against Reed for an amount within

---

1. The record discloses further facts regarding the accident but we shall defer mentioning these until later, when we consider the evidence upon which the jury reached its verdict.

that limit. The letter also indicated what appellee's damages were. It stated that as of the date of the letter, appellee's liquidated damages were out-of-pocket expenses of $3,230.39 and a wage loss of $8,320; that she had suffered disfigurement of her face, a partial loss of vision, and was permanently disabled; that she was 56 years old with a life expectancy of 22.4 years; and that she was claiming, in addition to her liquidated damages, damage for disfigurement, pain and suffering, and future medical expenses. R.R. 18a. Appellant's attorney replied by letter stating that the policy limit was $10,000, but that "[a]s a result of our review of the facts of this accident we do not believe that Mr. Reed was negligent in the operation of his car and, therefore, we do not feel our refusal to make any offer to you is a failure to settle in good faith." R.R. 19a.

In May 1974 all three suits were tried to the same jury. The jury found that both Reed and Owens were negligent, which meant, under the law as it was at that time, that neither could recover from the other. In appellee's suit against Reed, the jury returned a verdict for appellee in the amount of $34,257.15. After appellant had paid its $10,000 policy limit, appellee filed a writ of execution for the balance, naming appellant as garnishee. The jury found that appellant had not acted in good faith, and a verdict of $24,215.15,[2] plus interest, was entered for appellee.

On appeal, appellant assigns no trial error. Its only argument, as we have indicated above, is that the evidence was insufficient to support the jury's verdict, and that the lower court therefore erred in refusing to grant its motion for judgment n. o. v.

Our Supreme Court first held that an insurance company owes its insured a duty of good faith, and that a violation of that duty may lead to liability for the full amount of a verdict obtained against the insured, in *Cowden v. Aetna Casualty & Surety Company*, 389 Pa. 459, 134 A.2d 223

2. We are not told why the verdict was not slightly larger, *i. e.*, $34,257.15 less $10,000. However, counsel stipulated to the amount of the verdict. R.R. 555a.

(1957). In *Cowden* the Court noted that although the question was one of first impression in Pennsylvania, it had been considered extensively by courts in other states and by commentators, and the good faith standard represented the majority rule. *Id.*, 389 Pa. at 468–69, 134 A.2d at 227–28. *See e. g.,* Keeton, "Liability Insurance and Responsibility for Settlement." 67 Harvard L.Rev. 1136 (1954); Annot.: Duty of Liability Insurer to Settle or Compromise, 40 A.L.R.2d 168. The Court has reiterated the good faith standard in subsequent cases, *e. g., Gedeon v. State Farm Mutual Automobile Insurance Company,* 410 Pa. 55, 188 A.2d 320 (1963); *Gray v. Nationwide Mutual Insurance Company,* 422 Pa. 500, 223 A.2d 8 (1966), as has this court, *e. g., Moody v. Nationwide Insurance Company,* 257 Pa.Super. 642, 390 A.2d 311 (1978), and as have federal courts applying Pennsylvania law, *e. g., Bell v. Commercial Insurance Company of Newark, New Jersey,* 280 F.2d 514 (3d Cir. 1960); *Ashbrook v. Kowalick,* 332 F.Supp. 78 (E.D.Pa.1971), *aff'd mem.,* 474 F.2d 1338 (3d Cir. 1973).

In the present case, the lower court carefully explained the good faith standard to the jury. R.R. 533a–42a. Following the court's charge, appellant's counsel indicated on the record his satisfaction with the charge. *Id.* at 551a.

In considering whether the jury was entitled to find that appellant had not exercised good faith, we must view the evidence, together with the inferences that may be drawn from it, in the light most favorable to appellee as the verdict winner. *Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973); *Moyer v. Ford Motor Co.,* 205 Pa.Super. 384, 209 A.2d 43 (1965). This is so regardless of whether judgment n. o. v. was granted, *Handfinger v. Philadelphia Gas Works,* 439 Pa. 130, 266 A.2d 769 (1970), or, as here, was denied, *Glass v. Freeman,* 430 Pa. 21, 240 A.2d 825 (1968), by the lower court.

Appellee's principal witness was Silvio P. Cerchie, who testified as an expert on insurance industry practice in handling claims resulting from automobile accidents. Cerchie's background included experience as a claims adjuster

and claims attorney for a major insurance company and private practice as an attorney representing both plaintiffs and defendants in personal injury cases. Cerchie reviewed appellant's file, the depositions, and appellee's complaint, and on the basis of these, summarized the information available to appellant at the time it refused to offer to settle appellee's claim within the limit of its policy with Reed. The documents that Cerchie reviewed were introduced into evidence and sent out with the jury for its use during its deliberations.

At the end of his direct testimony, Cerchie expressed the opinion that appellant's refusal to offer to settle was not in good faith and was contrary to accepted insurance industry practice. R.R. 401a.

In summarizing the information available to appellant, Cerchie identified for the jury certain items of information that he believed should have caused appellant to recognize a serious chance that Reed might be found negligent. These items were: statements of disinterested witnesses that because of heavy fog, visibility was very limited; uncertainty as to whether Reed's headlights had been on; Reed's own admission that he had been traveling 45 to 50 miles an hour; and evidence that after applying his brakes, Reed had skidded 57 feet to the point of collision with Owens' automobile and an additional 21 feet beyond. Cerchie also explained that because appellee had been a passenger in Owens' automobile, there could be no question of contributory negligence on her part. Accordingly, he noted, since appellee's medical expenses and lost wages already, i. e., as of the time of the offer to settle, exceeded the $10,000 policy limit, appellant should have realized that if Reed were found negligent at all, the amount of the verdict would almost certainly be in excess of the limit. Finally, Cerchie expressed surprise that appellant had not joined Owens as an additional defendant; he pointed out that appellant's file indicated that almost from the time of the accident, appellant was more concerned about potential liability to appellee than to Owens, because as to appellee, contributory negli-

gence was not available as a defense, while as to Owens, it was available.

In response to this testimony, appellant argued, and continues to argue on appeal, that it was its honest belief that Reed was not negligent. Each of appellant's claims officials who had handled the case between the accident in 1969 and the trial in 1974, when Reed was found negligent and a verdict for appellee was returned, testified as to his belief that Reed had not been negligent, and as to his recommendation against settlement. Paul Silverblatt, who had been retained by appellant and represented Reed at the 1974 trial, testified to the same effect. Also, in the course of cross-examining Cerchie, appellant brought out the fact that it had paid Reed on his uninsured motorist coverage, and that this payment was consistent with a belief that Reed had not been negligent—for otherwise payment of the uninsured motorist's claim would have been barred by his contributory negligence. Finally, appellant emphasizes that the trial judge states in his opinion that had he been on the jury, he would have found that appellant had acted in good faith. Brief for Appellant at 38–41.

■ We have no difficulty in concluding that on the basis of Cerchie's testimony, the jury was entitled to find that in refusing to offer to settle within the policy limit, appellant had not acted in good faith. Appellant's mistake is its apparent belief that proof of sincerity is equivalent to proof of good faith. For purposes of disposition, we may assume that appellant's refusal to offer to settle was based on the sincere belief that Reed had not been negligent.[3] The good faith standard requires more than proof of sincerity:

3. The evidence by no means requires such an assumption. Thus, as Cerchie pointed out, Reed's uninsured motorist claim was paid by appellant before the trial of the three suits arising from the accident. [It was in fact paid several years before the trial.] Even if payment of the claim is regarded as evidence of a sincere belief by appellant that Reed had not been negligent, that would be so only as of the time of payment; by the time appellant refused to offer to settle, its belief regarding Reed's negligence might have changed. Furthermore, the jury was not bound to accept the testimony of appellant's

"[A] decision not to settle must be a thoroughly honest, intelligent and objective one. It must be a realistic one when tested by the necessarily assumed expertise of the company." [*Bowers v. Camden Fire Ins. Assoc.*, 51 N.J. 62, 71, 237 A.2d 857, 861 (1968)]. This expertise must be applied, in a given case, to a consideration of *all the factors* [emphasis in the original] bearing upon the advisability of a settlement for the protection of the insured. *While the view of the carrier or its attorney as to liability is one important factor, a good faith evaluation requires more.* [emphasis added] It includes consideration of the anticipated range of a verdict, should it be adverse; the strengths and weaknesses of all of the evidence to be presented on either side so far as known; the history of the particular geographic area in cases of similar nature; and the relative appearance, persuasiveness, and likely appeal of the claimant, the insured, and the witnesses at trial. *Garner v. Am. Mut. Liab. Ins. Co.*, 31 Cal.App.3d 843, 107 Cal.Rptr. 604, 607–697 (1973).

*Rova Farms Resort, Inc. v. Investors Insurance Company of America*, 65 N.J. 474, 489–90, 323 A.2d 495, 503–04 (1974).

Here, the jury was entitled to find that even assuming the sincerity of appellant's representatives, their appraisal of the case was not either intelligent or objective, and their refusal to offer to settle, therefore, was not in good faith. Given appellee's injuries, it was obvious that any verdict in her favor would exceed the policy limit. It was therefore especially critical to appraise the likelihood of such a verdict. In making that appraisal, one could anticipate that a—if not the—principal issue at trial would be the degree of visibility, that is to say, considering the fog, was Reed driving too fast? Appellant knew that there would be conflicting testimony on this point. Appellant further knew that appellee would present an appealing sight to the jury—a middle-aged woman, visibly and permanently in-

witnesses regarding their sincerity. *Cooper v. Columbia Gas of Pennsylvania, Inc.*, 433 Pa. 179, 248 A.2d 852 (1969).

jured, clearly through no fault of her own. One could further anticipate, therefore, that the jury might very well resolve conflicts in the testimony in appellee's favor. Confronted with such a case, the intelligent and objective claims adjuster does not refuse to offer to settle. Or so the jury was entitled to conclude. The fact, so emphasized by appellant, that the trial judge evidently would have concluded otherwise is immaterial, as the judge recognized in his opinion refusing to grant appellant's motion for judgment n. o. v. The jury having reached its verdict, the court's duty is not to ask whether it would have reached the same verdict but whether the verdict is in accordance with law and supported by the evidence, as the jury could have regarded that evidence. *Brown v. Shirks Motor Express*, 393 Pa. 367, 143 A.2d 374 (1958).

We are the more persuaded that the jury was entitled to conclude that appellant's refusal to offer to settle had not been an intelligent and objective decision by a letter written immediately after the 1974 trial by Attorney Silverblatt to appellant's superintendent. The letter reads in relevant part:

> I was disappointed with the verdict but not surprised. Mrs. Shearer was a pethetic [*sic*] sight and in view of her initial injuries and permanency of her present condition I felt that if she was going to get a verdict it could be a very substantial one.
>
> . . . .
>
> While I did not discuss this with any of the jurors after the verdict, I think it had to boil down to a question of fact of whether the fog was a light fog as testified by your insured or whether it was a thick, dense and heavy ground fog as testified by Mr. Owens, Mrs. Leavy, Mrs. Denochick and George Lewis, who was the truck driver who came upon the scene of the accident immediately after it happened. If the jury believed that the fog was thick, as they obviously did, then even in my own opinion your insured traveling at 45 MPH was probably driving too fast for conditions, and his negligence together with the negligence of Robert Owens was joint and concurrent.

This letter was read in its entirety to the jury, R.R. 518a–21a, and was introduced as an exhibit.

In reaching our decision, we have not overlooked the possibility that we should reexamine the good faith standard. We recognize, as others have before us, that there is an inherent conflict of interest between an insurance company and its insured once an offer to settle within policy limits has been received. Whenever the insurance company decides not to settle, it has, in effect, chosen its interests over that of its insured's—and by terms of virtually all liability insurance policies, including the one in this case, that decision is made solely by the insurance company. If the company's guess is wrong, but nevertheless satisfies the good faith standard, it is not the company, which made the decision, but the insured who suffers. We need not discuss this peculiar situation at any length because others have already done so very well. *See, e. g., Crisci v. Security Insurance Company of New Haven,* 66 Cal.2d 425, 430, 58 Cal.Rptr. 13, 17, 426 P.2d 173, 177 (1967); *Merritt v. Reserve Insurance Company,* 34 Cal.App.3d 858, 868–74, 110 Cal. Rptr. 511, 518–22 (1973); *Rova Farms Resort, Inc. v. Investors Insurance Company of America,* 65 N.J. 474, 496–502, 323 A.2d 495, 507–10 (1974). In some of the cases the courts have indicated that in a proper case they would consider resolving the conflict between an insurance company and its insured by adopting an automatic liability rule, that whenever the company refused to offer its policy limit toward a settlement, it would be liable for any excess verdict. *E. g., Crisci v. Security Insurance Company of New Haven, supra,* 66 Cal. at 430; 58 Cal.Rptr. at 17; 426 P.2d at 177; *Johansen v. California State Automobile Association Inter-Insurance Bureau,* 15 Cal.3d 9, 17 n. 6, 123 Cal.Rptr. 228, 233 n. 6, 538 P.2d 744, 749 n. 6 (1975); *Rova Farms Resort, Inc. v. Investors Insurance Company of America, supra,* 65 N.J. at 499–502, 323 A.2d at 509–10. However, in each of these cases the insurance company was found liable for the excess verdict by application of the existing good faith standard,

and the court chose to leave any change in the law to a future day.[4] We shall do the same.

Affirmed.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

I concur in the decision of the majority. However, I would require that the insurer adhere to the "utmost good faith" in defending their insured.

It has consistently been held that an insurer owes to his insured a defense which must be conducted in accordance with the ordinary care required in such a defense. The insurer is liable for any harm suffered by the insured "in the form of a judgment in excess of policy limits because of negligence of a company in defense of a suit against insured." Robert E. Keeton, *Liability Insurance and Responsibility For Settlement*, 67 Harv.L.R. 1136 (1954). This responsibility owed the insured includes the duty to settle a case when to do so is in the insured's best interest. *American Mutual Liability Insurance Company v. Cooper*, 61 F.2d 446 (5th Cir. 1932), cert. denied 289 U.S. 736, 53 S.Ct. 595, 77 L.Ed. 1483 (1933).

The insured's duty is held to a standard of ordinary care. The Pennsylvania Courts have interpreted this standard of care to require that the insurer act in "good faith." In *Gedeon v. State Farm*, 410 Pa. 55, 188 A.2d 320 (1963) at 322, the Pennsylvania Supreme Court held:

> . . . [B]y asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary posi-

4. Our research has disclosed no appellate decision adopting the automatic liability rule. In *Johansen v. California State Auto. Assoc. Inter-Ins. Bur.*, 15 Cal.3d 9, 17 n. 6, 123 Cal.Rptr. 288, 233 n. 6, 538 P.2d 744, 749 n. 6 (1975), the California Supreme Court said that the New Jersey Supreme Court had done so in *Rova Farms*. However, the language of *Rova Farms* does not support that reading, and the New Jersey court has itself explicitly said so. *See Fireman's Fund Insurance Company v. Security Insurance Company of Hartford*, 72 N.J. 63, 70, 367 A.2d 864, 868 (1976).

tion towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured. If the insurer is derelict in this duty, as when it negligently investigates a claim or unreasonably refuses an offer of settlement, it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured. See *Cowden v. Aetna Casualty and Surety Company*, 389 Pa. 459, 134 A.2d 223 (1957).

Former Chief Justice Eagen stated in a concurring opinion to *Gedeon*, supra, the rules which apply to the duty to settle as required by *Cowden*, supra. They are:

(1) The insurer is required to treat the claim against the insured as if it were only against itself;

(2) The insurer must not expose the insured to the risk of pecuniary loss of a settlement or verdict beyond the limits of the policy unless the insurer has a bona fide belief, based on all the relevant circumstances, that it can win the suit;

(3) The insurer cannot hazard the well being of the insured;

(4) Good faith requires that the chance of a finding of nonliability be real and substantial and that the decision to litigate be made honestly.

Id., 389 Pa. 459, 134 A.2d at 223.

The "good faith" standard required by *Cowden*, supra, appears to require a higher level of "good faith" than ordinary. This is evidenced by the court's holding that the finding of non-liability must be "real and substantial." The *Cowden*, supra, court based its decision upon several earlier opinions which give a clear indication of the rigor of scrutiny to be applied by this court in determining whether an insurer has defended in "good faith."

In *Weiner v. Targon*, 100 Pa.Super. 278 (1930), this court held:

The relationship of the insurer to the insured required a *high degree* of good faith in the conduct of the indemnity

company's counsel generally, and especially when the case was called for a trial in which he had undertaken to present the defense to the claim...

(Emphasis added.) *Cowden,* supra, 389 Pa. 462, 134 A.2d at 225; see also *Iron Mountain Security Storage v. American Specialty Foods,* 457 F.Supp. 1158 (E.D.Pa.1978). In *Perkoski v. Wilson,* 371 Pa. 553, 92 A.2d 189 (1952), the court stated:

When the company voluntarily undertook the defense of (the insured) in pursuance of its privilege under the policy, it assumed a position of trust and confidence which called for the exercise of the *utmost good faith, particularly in view of the possible conflict of interest between the insurer and the insured as later developed.*

(Emphasis added.) *Cowden,* supra, 389 Pa. 464, 134 A.2d 225; see also *Iron Mountain,* supra, and *Malley v. American Indemnity Co.,* 297 Pa. 216, 146 A. 571, 81 A.L.R. 1322 (1929) (which also required a showing of "utmost good faith.")

In light of the weight of precedent, I would hold that State Farm owed to its insured, Gerald Reed, the "utmost good faith" in handling his defense. This is particularly true when, as in the instant case, the plaintiff was an innocent victim of an automobile accident. To hold otherwise would be "unduly severe and inequitable." See *Brakeman v. Potomac Insurance Company,* 472 Pa. 66, 76, 371 A.2d 193, 198 (1977).

The claim adjusters and attorney for the defendant, State Farm, were each confronted with evidence that Reed had driven his car in what several disinterested witnesses described as dense fog at 45 to 50 miles per hour without his headlights turned on to signal oncoming traffic that he was approaching. The insurance company also neglected to join Owens as an additional defendant to the proceeding. These actions prejudiced the position of their client, Reed, by exposing him to greater risk of liability. In so doing, State Farm did not treat the claim against the insured as if it were only against itself. See *Cowden,* supra.

Furthermore, and most significantly, State Farm took no steps toward arranging a settlement with Shearer. State

Farm's attorney, Silverblatt, told them that their case depended on a sympathetic finding by the jury that the fog was not dense. While Silverblatt informed State Farm that *he thought they would win*, he never assured the company they would succeed in the suit. It was not reasonable for State Farm to believe they would come out of this action "scott free" as Shearer's expert witness explained to the court.

It appears to me that State Farm negligently provided their insured, Reed, a defense. In so doing, State Farm exposed Reed to liability to which, were a proper defense given, he would never have experienced. Therefore, I would hold that State Farm did not act in "good faith."